[Dkt. No. 35]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| HELEN THOMAS-FISH, Individually and as Executrix of the Estate of Robert C. Fish,<br><br>    Plaintiff,<br><br>    v.<br><br>AETNA STEEL PRODUCTS CORP., *et al.*,<br><br>    Defendants. | Civil No. 17-cv-10648 RMB/KMW<br><br>**OPINION** |

LEVY KONIGSBERG, LLP
By: Amber Rose Long, Esq.
    Joseph J. Mandia, Esq.
800 Third Avenue, 11th Floor
New York, New York 10022
        Counsel for Plaintiff


McGIVNEY, KLUGER & COOK, P.C.
By: William D. Sanders, Esq.
18 Columbia Turnpike, 3rd Floor
Florham Park, New Jersey 07932
        Counsel for Defendants

**DISTRICT JUDGE RENÉE MARIE BUMB:**

This matter comes before the Court upon the filing of a Motion to Remand by Plaintiff Helen Thomas-Fish (the "Plaintiff"). Plaintiff originally filed this products liability

suit against Defendants[1] in the Superior Court of New Jersey, alleging that her deceased husband, Robert Fish ("Fish"), was injuriously exposed to asbestos while working on the construction of a federal marine vessel. Defendants removed this suit to the United States District Court for the District of New Jersey pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Having considered the parties' briefs, and for the reasons stated below, the Court will deny the motion to remand.

I.   **BACKGROUND**

Plaintiff, individually and as executrix of Fish's estate, alleges that Fish contracted and died from mesothelioma caused by his exposure to asbestos-containing joiner panels during the construction of the N.S. Savannah. (Compl. ¶ 6) Fish's alleged exposure occurred in 1960, while he was employed at the New York Shipbuilding and Dry Dock Company ("NY Ship") facility in Camden, New Jersey, where the N.S. Savannah was being constructed. (Compl. ¶ 4) The N.S. Savannah was a "prototype nuclear-powered merchant marine vessel" developed under the

---

[1] Plaintiff sued the following Defendants: Aetna Steel Products Corporation; Avborne Accessory Group, Inc.; Dover Corporation; Dover Engineered Systems, Inc.; Roller Bearing Company of America, Inc.; Sargent Aerospace & Defense, LLC; Sonic Industries, Inc.; and Sargent Industries, Inc. (Compl. ¶ 6; Notice of Removal, Ex. A)

direction of the United States Maritime Administration ("MARAD"), an agency within the United States Department of Commerce, and the Atomic Energy Commission ("AEC"). (Notice of Removal ¶ 11) During Fish's employment at NY Ship, he allegedly maintained close proximity to the installation of asbestos-containing joiner panels on the N.S. Savannah, which "generated respirable dust in [his] presence and exposed him to asbestos." (Compl. ¶ 4) Fish died in 2016 from complications related to mesothelioma. (Compl. ¶ 2)

On September 22, 2017, Plaintiff brought this products liability action against a number of companies believed to be involved in the manufacture, supply, installation or distribution of the asbestos-containing joiner panels. (Compl. ¶ 6) Defendants timely removed the action to this Court, invoking the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which allows a defendant to remove from state court a case that is brought against that defendant for acts committed under the direction of a federal officer or agency. Defendants assert that removal is proper because the joiner panels at issue were installed pursuant to design specifications approved by MARAD, a federal agency, in conjunction with MARAD's contracts for the construction of the non-nuclear components of the N.S. Savannah. (Notice of Removal ¶¶ 21-22) Defendants' Notice of Removal included the report of maritime design expert Dr. Kenneth Fisher

(the "Fisher Report"), which states that the use of asbestos-containing joiner panels was contractually required by the federal government for the N.S. Savannah.

After the parties submitted pre-motion letters in accordance with this Court's Individual Rules and Procedures, Plaintiff timely filed a motion for remand on February 26, 2018, arguing that removal is improper under 28 U.S.C. § 1442(a)(1).

## II. LEGAL STANDARD

The federal officer removal statute provides, in relevant part:

> (a) A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . .

28 U.S.C. § 1442(a)(1).

The statute "'protect[s] officers of the federal government,' and those acting under them, 'from interference by litigation in state court while those officers [and those under their charge] are trying to carry out their duties.'" Baran v. ASRC Fed. Mission Sols., No. 17-7425 (RMB/JS), 2018 WL 3054677, at *4 (D.N.J. June 29, 2018) (quoting Papp v. Fore-Kast Sales Co., 842 F.3d 805, 811 (3d Cir. 2016)). "Section 1442(a) is an

4

exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." Papp, 842 F.3d at 811 (internal quotation marks and citation omitted). "Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum." Id. (quoting In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Phila., 790 F.3d 457, 466-67 (3d Cir. 2015)). This presumption in favor of removal "is necessary to ensure that a federal officer [or a person acting under the officer] does not have to 'win his case before he can have it removed' and provides for a federal forum to adjudicate the merits of the defense." In re Asbestos Prods. Liability Litig. (No. VI), 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011) (quoting Willingham v. Morgan, 395 U.S. 402, 407 (1969)).

A motion to remand "is properly evaluated using the same analytical approach" to a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Papp, 842 F.3d at 811. "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." Id. (internal quotation marks and citation omitted). Whereas a facial attack "does not dispute the facts alleged" in the notice of removal and "requires the court to

5

consider the allegations . . . as true," a factual attack "disputes the factual allegations underlying the [] assertion of jurisdiction and involves the presentation of competing facts." Id. (internal quotation marks and citation omitted).

As the parties removing the action to federal court, Defendants bear the burden of proving that subject matter jurisdiction exists and removal is proper. See Baran, 2018 WL 3054677, at *4. Defendants must meet four requirements to properly remove their case under 28 U.S.C. § 1442(a)(1):

> (1) [the defendant] is a "person" within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are "for, or relating to" an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims.

Papp, 842 F.3d at 812 (citing Def. Ass'n, 790 F.3d at 467).

### III. ANALYSIS

Plaintiff argues that Defendants have failed to meet the "acting under," "for or relating to," and "colorable federal defense" requirements necessary to establish federal jurisdiction under the federal officer removal statute. Plaintiff challenges jurisdiction facially and does not dispute the facts alleged by Defendants in their Notice of Removal. Therefore, the Court must consider these facts in the light most

6

favorable to Defendants. See Papp, 842 F.3d at 811. The Court will address each of the §1442(a)(1) requirements in turn.

### A. "Persons" Within the Meaning of the Statute

Plaintiff does not dispute that Defendants are "persons" under the federal officer removal statute. Indeed, Papp states that "'corporations, companies, associations, firms, partnerships, societies, and joint stock companies'" are persons within the meaning of the statute. 842 F.3d at 812 (quoting 1 U.S.C. § 1).

### B. "Acting Under" a Federal Officer or Agency

As the Third Circuit explained in Papp:

> The 'acting under' requirement, like the federal removal statute overall, is to be liberally construed to cover actions that involve an effort to assist, or to help carry out, the federal supervisor's duties or tasks. The classic case of such assistance as it relates to government contractors is when the private contractor acted under a federal officer or agency because the contractors helped the Government to produce an item that it needed. When, as occurred in this instance, the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete, that contractor is 'acting under' the authority of a federal officer.

842 F.3d at 812.

This case is closely analogous to Papp, where the Third Circuit held that the 'acting under' requirement was "easily satisfie[d]." 842 F.3d at 813.[2] In Papp, the plaintiff's

---

[2] See also, Papp, 842 F.3d at 813 ("we are presented here with an archetypal case.").

7

"allegations [were] directed at actions [the defendant] took while working under a federal contract to produce an item the government needed, to wit, a military aircraft [] that the government otherwise would have been forced to produce on its own."  Id.  Very similarly in this case, Plaintiff's allegations are directed at Defendants' actions, or alleged failures to act, while working under a contract with MARAD (a government agency) to construct an item the government needed, to wit, a nuclear powered ship, that the government would otherwise have been forced to construct on its own.[3]

    Plaintiff's arguments to the contrary are unavailing. First, relying on Good v. Armstrong World Industries, Inc., 914 F. Supp. 1125, 1128 (E.D. Pa. 1996), Plaintiff argues that Defendants must demonstrate that they were "'acting under' the direct and detailed control of a federal officer."  (Moving Brief, p. 8, 10 n.10, 13)  The Court declines to apply this standard, as Good pre-dates Papp by almost 10 years.  Papp is binding authority on this Court, and the Court applies its standard.  Nothing in Papp requires Defendants to allege or prove that the actions Defendants took, or failed to take,

---

[3]  Plaintiff makes no attempt to distinguish Papp's facts from this case, even though-- as Defendants observe in their Notice of Removal-- Plaintiff's counsel in this suit represented the Plaintiffs at the trial level in Papp.

8

"involved detailed regulation, monitoring, or supervision by the government." (Moving Brief, p. 10)

Second, Plaintiff asserts that Defendants cannot meet their burden because they have failed to "produce[] a single contract" or "a single material specification specific to the N.S. Savannah." (Moving Brief, p. 10) Thus, according to Plaintiff, "Defendants' removal is based on [nothing more than] adherence to federal regulations that were applicable to every vessel (commercial, government or otherwise-owned) constructed in the United States." (Id. at p. 11) Plaintiff's argument misrepresents the record.

While it is true that Defendants do not submit to the Court, at this early stage of the litigation, the documents specific to the N.S. Savannah, Plaintiff does not dispute that the N.S. Savannah was constructed pursuant to contracts with MARAD. Moreover, Defendants submit the report of maritime design and construction consultant, Kenneth W. Fisher, Ph.D., which states that the N.S. Savannah was designed and constructed pursuant to MARAD contracts. (Fisher Report, p. 2) This is sufficient to establish the "acting under" requirement as explained and applied in Papp.

Lastly, Plaintiff argues that Defendants have failed to show that they were "acting under" a federal agency in carrying out the complained-of conduct -- the failure to warn -- because

9

they do not provide any evidence that MARAD explicitly directed Defendants not to provide warnings about the dangers associated with the asbestos-containing joiner panels. (Moving Brief, p. 14) This argument fails. Defendants are not required to prove that the "complained-of conduct was done at the specific behest of the federal officer or agency" in order to satisfy the "acting under" requirement. See Papp, 842 F.3d at 813 (rejecting the argument that "the only way [defendant] could show it acted under a federal officer was to show 'that a federal officer or agency directly prohibited [defendant]' from warning third-parties of asbestos risks"); Def. Ass'n, 790 F.3d at 470 (holding that the "acting under" inquiry does not require that the "complained-of conduct *itself* was at the behest of a federal agency" but is instead satisfied when "the allegations are directed at the relationship" between defendant and the federal government). Rather, as held in both Papp and Defender Ass'n, Defendants meet the "acting under" requirement because they have demonstrated that they manufactured, supplied, installed, or distributed the joiner panels at issue pursuant to contracts with MARAD.

### C. Acts Done "for or Relating to" a Federal Officer or Agency

"In order to meet the 'for or relating to' requirement, 'it is sufficient for there to be a connection or association between the act in question and the federal office.'" Papp, 842

10

F.3d at 813 (quoting Def. Ass'n, 790 F.3d at 471).[4]  Here, as in Papp, the "act in question" is a failure to warn of the risks of asbestos. In Papp, the Third Circuit held this prong of the federal officer removal analysis was established by the removing defendant's assertions in its Notice of Removal that the aircraft "'was manufactured under the direct supervision, control, order, and directive of federal government officers,' . . . and that that control extended to 'the content of written materials and warnings associated with such aircraft.'" 842 F.3d at 813.

In this case, the removing Defendants assert that: (a) "[t]he construction of the N.S. Savannah took place under the direction and control of federal officers" (Notice of Removal ¶ 11); (b) the United States Government either "procured," "furnished," and/or "selected" the asbestos-containing products (Notice of Removal ¶ 4); and (c) MARAD and OSHA published standards for asbestos exposure which "effectively told [shipbuilding industry participants] [of the] hazards associated

---

[4]  Both Plaintiff and Defendants analyze the "acting under" prong and the "for or relating to" prong together.  While there may be factual overlap between the two prongs, it is helpful to keep them analytically separate.  The "acting under" prong focuses on the relationship between (a) the "private contractor" and (b) the "federal officer or agency," Papp, 842 F.3d at 812, whereas the "of or relating to" prong focuses on the relationship between (a) the "conduct" or "act in question" and (b) the "federal office." Id. at 813.

11

with the use of asbestos during ship construction." (Fisher Report ¶¶ 36-39) These allegations are sufficient to establish the requisite connection or association between the alleged failure to warn and the federal agency. As discussed above, and contrary to Plaintiff's argument as to this prong, Defendants are not required to allege that a federal officer specifically directed the private contractor to do, or not do, the specific complained-of act. Rather, Papp's standard only requires a "connection or association" between the conduct and the federal agency.

### D. A "Colorable" Federal Defense

At the removal stage, Defendants are required to assert a "colorable" federal defense-- i.e., a defense that is "legitimate and [could] reasonably be asserted, given the facts presented and the current law." Papp, 842 F.3d at 815; see also, id. ("A defendant need not win his case before he can have it removed.").

In their Notice of Removal, Defendants claim that they are entitled to the "government contractor" defense as stated in Boyle v. United Technologies Corp., 487 U.S. 500, 512 (1988). Under Boyle, a government contractor is immune from state tort liability in the workplace if: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United

12

States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. at 512. Although the Boyle test was announced in the context of design defect liability, the Third Circuit has applied the government contractor defense in failure-to-warn cases. See Papp, 842 F.3d at 814-15.

Construing the facts alleged in the light most favorable to Defendants, Defendants have raised a colorable government contractor defense. Defendants satisfy the first element of the Boyle test through their assertions that the federal government maintained complete control over the specifications of the joiner panels on the N.S. Savannah and the health hazards in privately operated, government-owned defense plants including NY Ship, where the N.S. Savannah was constructed. See Papp, 842 F.3d at 814 (finding that defendant met the first Boyle element by stating that the government "exercised complete control over any markings or labels on [defendant's] aircraft or aircraft components" and "the contents, including any warnings, of any technical manuals . . . were directed, reviewed and approved by the government"); Lewis v. Asbestos Corp., Ltd., No. 10-650 FLW, 2012 WL 3240941, at *5 (D.N.J. Aug. 7, 2012) (holding that defendant's allegation that the U.S. Navy "ordered [defendant] to unvaryingly adhere to every requested specification" with respect to defendant's asbestos-containing product satisfied the

first Boyle requirement.). According to Defendants, MARAD's specifications mandated the use of asbestos-containing Johns-Manville Marinite joiner panels and "[o]nly the involved government agencies . . . could have allowed the use of non-asbestos joiner bulkheads, at the time of the *N/S Savannah's* construction in 1958-1961." (Fisher Report ¶¶ 27-29, 44) Furthermore, the U.S. Public Health Service took on "[t]he responsibility for the evaluation and control of health hazards in [government-owned but privately operated defense] plants." (Fisher Report ¶ 34) Defendants' evidence sufficiently establishes, for purposes of the colorable defense analysis, that MARAD approved "reasonably precise specifications" for the joiner panels.[5]

---

[5] Plaintiff asserts that Defendants merely provided "off-the-shelf" products to the government. (Moving Brief, p. 12-13) Plaintiff relies on Boyle, which distinguished a situation involving a "federal procurement officer [who] orders, by model number, a quantity of stock [military equipment] that happen to be equipped" with a particular safety feature-- which would not warrant government contractor immunity-- from one in which military equipment design specifications incorporate significant governmental discretion. 487 U.S. at 509, 511. The Fisher Report establishes, for purposes of the colorable defense analysis, that the federal government purposely chose joiner panels that contained asbestos, and "the decision to incorporate asbestos as the primary joinery material was controlled solely by US government agencies: the Coast Guard and the Maritime Commission (later [MARAD])." (Fisher Report ¶¶ 27-30) The Fisher Report thus suggests that MARAD exercised a certain amount of discretion in setting forth "reasonably precise specifications" for the joiner panels on the N.S. Savannah rather than simply ordering commercially available joiner panels that happened to contain asbestos.  However, should this case proceed to summary

With respect to the second element, the Fisher Report states that "the bulkhead joinery system incorporated into the *N/S Savannah* utilized asbestos cement panels such as the Johns-Manville's Marinite panels," demonstrating that Defendants' joiner panels conformed to MARAD's specifications. (Fisher Report ¶ 29); see Papp, 842 F.3d at 814 (finding the second requirement met by defendant's "explicit" assertion that it "followed every specification set forth by the government" while building the asbestos-containing aircraft).

As to the third and final element, the Fisher Report states that the U.S. Navy and U.S. Maritime Commission had published recommended limits of exposure to air contamination for all shipyards that remained in place throughout the period of the N.S. Savannah's construction. (Fisher Report ¶¶ 36-37) Defendants maintain that, at the time the N.S. Savannah was built, "shipbuilding industry participants effectively had been told that whatever hazards were associated with the use of asbestos during ship construction were already identified by the federal government," and "the federal government was enforcing appropriate standards of air cleanliness at the shipyards

---

judgment, and the issue of the government contractor defense is raised, Plaintiff is, of course, free to present contrary evidence.

constructing ships for government agencies." (Fisher Report ¶ 39)

These assertions, taken as true, show that Defendants did not have superior knowledge of the risks of asbestos that they failed to share with the government. See Papp, 842 F.3d at 814 (holding that the court, when faced with a facial attack of subject matter jurisdiction, is bound to accept defendant's allegations in its notice of removal, including defendant's lack of awareness of the risks of asbestos, as true); Lewis, 2012 WL 3240941, at *5 (finding that defendant satisfied the third Boyle element by stating that it had no information about the dangers of its asbestos-containing product that was not already known to the U.S. Navy). Defendants have put forth facts that sufficiently satisfy, at this stage of the case, each of the three elements of the government contractor defense, thus presenting a colorable federal defense pursuant to § 1442(a)(1).[6]

## IV.   CONCLUSION

For the reasons set forth above, the Court holds that Defendants have sufficiently established this Court's jurisdiction pursuant to the federal officer removal statute.

---

[6] To be clear, the Court does not rule on whether the government contractor defense actually bars Plaintiff's claims.  Indeed, such a determination is not possible upon the present record. The Court holds only that Defendants' asserted government contractor defense is colorable, as that term is used in the federal officer removal analysis.

16

Therefore, Plaintiff's motion to remand will be denied. An Order consistent with this Opinion shall issue on this date.

DATED: July 31, 2018

                                          ___s/ Renée Marie Bumb_____
                                          RENÉE MARIE BUMB
                                          UNITED STATES DISTRICT JUDGE