## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HELEN THOMAS-FISH, Individually and ) <br> as Executrix of the Estate of Robert C. ) <br> Fish ) <br> ) <br>         Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> AVBORNE ACCESSORY GROUP, INC.; ) <br> DOVER CORPORATION; DOVER ) <br> ENGINEERED SYSTEMS, INC., f/k/a ) <br> Dover Diversified, Inc.; RBC BEARINGS ) <br> INCORPORATED, f/k/a Roller Bearing ) <br> Holding Company, Inc.; RBC SARGENT ) <br> AIRTOMIC; ROLLER BEARING ) <br> COMPANY OF AMERICA, INC., f/k/a ) <br> RBC Holdings Corp.; SARGENT ) <br> AEROSPACE & DEFENSE, LLC, f/k/a ) <br> Dover Sargent Aerospace & Defense, LLC; ) <br> SARGENT INDUSTRIES, INC. ) <br> ) <br>         Defendants. ) | <br><br><br><br><br><br><br><br><br>Civil Action No. 18-1195-MN-SRF |

## REPORT AND RECOMMENDATION

## I.  INTRODUCTION

Presently pending before the court in this asbestos-related personal injury action is a

motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to

Federal Rule of Civil Procedure 12(b)(6) filed by six existing or dissolved Delaware entities.

The moving defendants are as follows: Avborne Accessory Group, Inc. ("Avborne"), Dover

Corporation, Dover Engineered Systems, Inc. ("Dover Engineered"), Roller Bearing Company of

America, Inc. ("Roller Bearing"), Sargent Aerospace and Defense, LLC ("Sargent Aerospace"),

and Sargent Industries, Inc.[1] ("Sargent Industries") (collectively, "defendants"). (D.I. 50) For

---

[1] Sargent Industries, Inc. dissolved in 1993 and has no parent corporation. (D.I. 4)

the following reasons, I recommend GRANTING defendants' motion, in the manner set forth in this report and recommendation.[2]

## II. BACKGROUND

### A. Procedural History

On September 22, 2017, plaintiff Helen Thomas-Fish ("Mrs. Thomas-Fish" or "plaintiff") originally filed this personal injury action individually and as executrix of the Estate of Robert C. Fish against ten defendants in the Superior Court of New Jersey, asserting claims arising from the decedent's alleged harmful exposure to asbestos.[3] (D.I. 1, Ex. A)  On November 1, 2017, the case was removed to the U.S. District Court for the District of New Jersey (the "transferee court") by defendants Avborne, Dover Corporation, Dover Engineered, Sonic Industries, Inc.,[4] Roller Bearing, Sargent Aerospace, and Sargent Industries pursuant to 28 U.S.C. §§ 1331, 1442(a)(1), the federal officer removal statute,[5] and 1446.  (D.I. 1)  On December 12, 2017, the transferee court issued an Order to Show Cause as to why venue should not be transferred to this court.  (D.I. 21)  During the pendency of the Order to Show Cause, plaintiff filed a motion for remand, which was denied on July 31, 2018.  (D.I. 35; D.I. 41; D.I.

---

[2] The complete briefs for the motion are docketed as follows: defendants' opening brief in support of their motion to dismiss (D.I. 51), plaintiff's answering brief (D.I. 57), defendants' reply (D.I. 58), and plaintiff's amended sur-reply (D.I. 63).

[3] Prior to filing this case, plaintiff commenced a separate action in Maryland state and federal courts, alleging Mr. Fish's exposure to asbestos-containing products.  (D.I. 51 at 4; D.I. 57 at 7)  The District Court for the District of Maryland dismissed the case without prejudice on March 2, 2017.  (D.I. 57 at 8; D.I. 58 at 6)  The parties incorrectly assume that this court has access to review documents on the docket of the District Court for the District of Maryland.

[4] Sonic Industries, Inc. is owned by Roller Bearing Company of America, Inc., a subsidiary of RBC Bearings, Inc.  (D.I. 3)

[5] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office."  28 U.S.C. § 1442(a)(1).

42) On August 7, 2018, the transferee court ordered that plaintiff's claims be severed and transferred to this court pursuant to 28 U.S.C. § 1404(a).[6] (D.I. 45) On August 21, 2018, defendants filed their pending motion to dismiss, alleging deficiencies in pleading each of the five counts of the complaint. (D.I. 50)

## B. Facts

Plaintiff alleges that Mr. Fish developed mesothelioma as a result of exposure to asbestos-containing products that defendants manufactured, supplied, distributed, or installed during his service as a civilian at New York Shipbuilding and Drydock ("NY Ship") in Camden, New Jersey. (D.I. 1, Ex. A at ¶¶ 4, 6) Plaintiff asserts claims for strict liability, negligence, breach of express and implied warranties (Count I), marketing of an ultra-hazardous product (Count II), failure to warn (Count III), civil conspiracy (Count IV), and loss of consortium (Count V). (*Id.* at ¶¶ 9-30) In addition, plaintiff demands an award of punitive damages in each count. (*Id.* at 4-9)

Plaintiff alleges that in 1960, Mr. Fish's work placed him in close proximity on a frequent basis to joiners installing asbestos-containing panels on the NS Savannah, which was under construction.[7] (*Id.*) The joiners' work involved cutting panels to fit around fixtures for installation, "which generated respirable dust in Plaintiff['s] Decedent's presence and exposed him to asbestos." (*Id.*)

---

[6] The District Court for the District of New Jersey ordered that plaintiff's claims against defendants be severed and transferred to this District because it was proper in light of defendants' challenge to personal jurisdiction in New Jersey. (D.I. 51 at 3) Plaintiff's claims against two non-Delaware entities, RBC Sonic/Sonic Industries, Inc. and Aetna Steel Products Corporation, are still pending in the District Court for the District of New Jersey. (*Id.*)

[7] Plaintiff defines "joiners" as "joiner contractors that performed the carpentry work on the N.S. Savannah." (D.I. 57 at 5) Defendants do not dispute this definition. (D.I. 58 at 2)

Mr. Fish was diagnosed with mesothelioma on September 23, 2015 and passed away on September 24, 2016. (D.I. 1, Ex. A)

## III. STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[8] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-

___

[8] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

4

pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Iqbal*, 556 U.S. at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. DISCUSSION

### A. Choice of Law

Prior to being transferred to this District, this action was removed to the District Court for the District of New Jersey based on federal officer jurisdiction. (D.I. 1) A federal court's role under federal officer jurisdiction is "similar to that of a federal court sitting in diversity." *Introcaso v. Meehan*, 2008 WL 161213, at *1 (E.D. Pa. Jan. 14, 2008). Thus, the court must "apply the choice of law rule of the forum state to determine the law applicable to this action, as it would in a diversity action." *Gallelli v. Prof'l Ins. Mgmt.*, 1994 WL 45729, at *3 (E.D. Pa. Feb. 10, 1994). In tort actions such as this, Delaware has adopted the "'most significant relationship'" test for choice of law. *ACCU Pers., Inc. v. AccuStaff, Inc.*, 846 F. Supp. 1191, 1212 (D. Del. 1994) (quoting *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991)). "That is, the state law which 'has the most significant relationship to the occurrence and the parties' will govern." *Id.* (quoting *Travelers Indem. Co.*, 594 A.2d at 47).

The parties dispute whether New Jersey or maritime law applies to the plaintiff's claims. Defendants argue that maritime law governs. (D.I. 51 at 11) Defendants further argue that,

5

based upon the deficiencies in the pleadings, dismissal is warranted regardless of the choice of law selection.[9] (*Id.*) Here, it is alleged that the decedent, Mr. Fish, was exposed to asbestos-containing products for which defendants are responsible, solely while working at the shipyard and drydock at NY Ship. (D.I. 1, Ex. A at ¶ 4) Therefore, for the purposes of the pending motion, the court will apply New Jersey law.

## B. Count I

### i. Strict Liability & Negligence

A plaintiff's "products liability action 'may rest on grounds of negligence, strict liability, or both.'"[10] *Hughes v. A.W. Chesterton Co.*, 89 A.3d 179, 184 (N.J. Super Ct. App. Div. 2014) (quoting *James v. Bessemer Processing Co.*, 714 A.2d 898, 907 (N.J. 1998)). "The most significant distinction between the two causes of action is that, in a strict liability case, it is presumed the seller 'knew of the product's propensity to injure as it did' while in the ordinary negligence case 'such knowledge must be proved; the standard is what the manufacturer' knew or should have known.'" *Id.* (quoting *James*, 714 A.2d at 908). In order to plead strict liability

---

[9] The substantive facts upon which the court could conduct a choice of law analysis are sparse. The only information as to the location of plaintiff's alleged exposure is stated at paragraph 4 of the complaint. (D.I. 1, Ex. A at ¶ 4) ("Plaintiffs' Decedent was exposed to asbestos while working in 1960 as a civilian at New York Shipbuilding and Drydock ('NJ Ship') located in Camden, New Jersey, during which time he was in close proximity on a frequent and routine basis to joiners installing asbestos-containing panels on the NS Savannah.") Thus, the allegation supports that plaintiff's alleged exposure occurred while performing work on a ship in drydock, making it unlikely that maritime law governs. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) (concluding that maritime law applied when workers operated a crane on a barge stationed in a river); *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002) (determining maritime law, not New Jersey law, applied because injuries transpired on a cruise line vessel traveling in navigable waters); *Leonard v. CBS Corp.*, 2014 WL 345216, at *1 n.1 (E.D. Pa. Jan. 28, 2014) (noting that work performed on a dock is considered land-based work).

[10] Although the New Jersey Product Liability Act ("PLA") largely applies to product liability actions under New Jersey law, the asbestos claims plaintiff asserts here fall within the environmental tort exception to the PLA. *See* N.J. Stat. Ann. 2A:58C-1(b)(4).

under New Jersey law, a plaintiff must show "that the product was defective, that the defect existed when the product left the defendant's control, and that the defect caused injury to a reasonably foreseeable user." *Id.* at 184-85 (quoting *Zaza v. Marquess & Nell*, 675 A.2d 620, 627 (N.J. 1996)). "The mere absence of a warning on an asbestos-containing product does not render the product defective." *Id.* at 185.

> The plaintiff in an asbestos failure to warn case must also prove two types of causation: product-defect causation and medical causation. Product-defect causation requires proof that the defect . . . existed when the product left the defendant's control and that the absence of a warning caused injury to a reasonably foreseeable user." To present a prima facie case of medical causation, a plaintiff must satisfy "the frequency, regularity, and proximity test."

*Id.* (internal quotations and citations omitted) (citing *Sholtis v. American Cyanamid Co.*, 568 A.2d 1196, 1207 (N.J. Sup. Ct. App. Div. 1989) (plaintiff must prove "an exposure of sufficient frequency, with a regularity of contact, and with the product in close proximity")).

In the instant case, plaintiff's conclusory allegations fail to state a claim for failure to warn for which defendants could be found strictly liable or negligent. The conclusory allegations themselves fail to identify any of the elements of what constitutes a failure to warn. More importantly, the only allegations made are that, collectively, all defendants are in some unspecified way responsible for some failing to warn of hazards as to some unknown type of products utilized with unknown frequency and in unknown proximity to the plaintiff's decedent, allegedly causing him harm. This is "precisely the type of vague, 'defendant-unlawfully-harmed me accusation' that the Supreme Court [ ] condemned' in *Iqbal*." *Bulanda v. A.W. Chesterton Co.*, 2011 WL 2214010, at *2 (N.D. Ill. June 7, 2011).

The court is left only with allegations "collective to all Defendants, and specific to none." *Baldonado v. Avrinmeritor*, C.A. No. 13-833-SLR-CJB, 2014 WL 2116112, at *10 (D. Del. May 20, 2014). Plaintiff argues that she is "faced with the uncertainty surrounding the identity/ies of

the successor(s)-in-interest to the joiner contractor, [and] has properly pled [that] 'one, some or all' of the Moving Defendants are the successor to or are otherwise liable for the tortious conduct of the joiner contractor that performed work on the N.S. Savannah."[11]  (D.I. 57 at 11-12)

Plaintiff contends that this information is not publicly available and solely within the control of defendants.[12]  (D.I. 63 at 1-2)

However, plaintiff must demonstrate a "showing of a certain set of facts[] that a theory exists upon which [plaintiff] may be able to hold defendants liable." *AJZN, Inc. v. Yu*, C.A. No. 13-149, 2015 WL 331937, at *16 (D. Del. Jan. 26, 2015) (internal quotations omitted) (quoting *Corp. Property Assocs. 8, L.P. v. Amersig Graphics, Inc.*, 1994 WL 148269, at *5 (Del. Ch. Mar. 31, 1994)).  Here, plaintiff has not pleaded that any of the defendants are the successor-in-interest to the joiner contractor, and the complaint does not mention the words "successor" or

---

[11] Plaintiff argues that the complaint as filed was governed by and met requirements under New Jersey law. (D.I. 57 at 5)  However, "once a case has been removed to federal court, its course is to be governed by federal law, including the Federal Rules of Civil Procedure." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 441 (1974).

[12] Plaintiff contends that defendants have refused to provide her with this information. (D.I. 57 at 8)  Defendants argue that they are not improperly withholding Rule 26(a)(1) initial discovery disclosures because their obligation to produce has not been triggered as they have not yet had a Rule 26(f) conference following transfer to this court. (D.I. 58 at 4-5)  Rule 26(a)(1)(C) notes that:

> A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan.

Fed. R. Civ. P. 26(a)(1)(C).  A Rule 26(f) conference has not yet taken place and no other time has been set by stipulation or court order.  Therefore, it is premature to consider whether defendants have improperly withheld initial discovery disclosures.
Plaintiff also argues that defendants failed to provide proper service. (D.I. 57 at 4-5 & n.5)  This argument is misplaced in its briefing in opposition to the pending Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(b)(5).

8

"predecessor." *(See* D.I. 1, Ex. A) Plaintiff speculates that all of the defendants are related to the joiner contractor "(or its putative successor(s))" because they "appear to be related through a string of complex corporate transactions and maneuvering, the details of which cannot be fully ascertained based on publicly available information." (D.I. 63 at 3) Plaintiff additionally argues that she is simply pleading in the alternative. (D.I. 57 at 10-11) Plaintiff disregards that all claims, regardless of whether pleaded as alternative claims, must meet federal pleading standards. *See* Fed. R. Civ. P. 8(d)(2); *Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 500 (W.D. Pa. 2013) (citing *Iqbal*, 556 U.S. at 663); *Synesiou v. DesignToMarket, Inc.*, 2002 WL 501494, at *4 (E.D. Pa. Apr. 3, 2002). Plaintiff has not pleaded the elements for successor liability, nor sufficient factual matter to suggest any one of the defendants is a successor-in-interest to an entity allegedly responsible for plaintiff's asbestos exposure.[13]

Furthermore, plaintiff argues that defendants are "on notice" of the substantive claims because their Notice of Removal "demonstrated a thorough knowledge of the factual and legal basis for plaintiff's claims in the Complaint." (D.I. 57 at 3, 5-6) A Rule 12(b)(6) motion is directed to the complaint, not any other pleading or filing. It is the complaint itself which must satisfy the requirements under *Iqbal* and *Twombly*. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *H.Y.C. v. Hyatt Hotels Corp.*, C.A. No. 15-887-RGA, 2016 WL 107924, at *1 (D. Del. Jan. 8, 2016).

Therefore, I recommend granting defendants' motion to dismiss plaintiff's strict liability and negligence claims in Count I without prejudice.

---

[13] "[A] plaintiff's claim of successorship liability is satisfied by general allegations of successorship." *Premier Pork L.L.C. v. Westin, Inc.*, 2008 WL 724352, at *4 (D.N.J. Mar. 17, 2008).

9

### ii. Breach of Express Warranty

In order to state a claim for breach of express warranty under New Jersey law, a plaintiff must properly allege: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011).

In Count I, plaintiff alleges that defendants "breached their warranties, both express and implied, for fitness of purpose and merchantability." (D.I. 1, Ex. A at ¶ 10) Plaintiff has not pleaded which defendants would be responsible for express warranties. The complaint does not state what each defendant's products are, or any affirmation, promise, or description made by any defendant on which plaintiff or Mr. Fish relied. *See Huber v. Howmedica Osteonics Corp.*, 2008 WL 5451072, at *4 (D.N.J. Dec. 31, 2008). Consequently, the court recommends granting defendants' motion to dismiss plaintiff's breach of express warranty claim in Count I without prejudice.

### iv. Breach of Implied Warranties

In order for the implied warranty of merchantability to be breached in New Jersey, "the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 542 (D.N.J. 2011) (internal quotations omitted) (quoting *In re Toshiba Am. HD DVD Marketing & Sales Practices Litig.*, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009)). "[T]he warranty of merchantability simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." *Id.* (internal quotations and emphasis omitted) (quoting

10

*Ferrari v. Am. Honda Motor Co., Inc.*, 2009 WL 211702, at \*3 (N.J. Super. Ct. App. Div. Jan. 30, 2009)).

The implied warranty of fitness for a particular purpose is breached when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 612 (D.N.J. 2013) (internal quotations omitted) (quoting N.J. Stat. Ann. 12A:2-314).

In the present complaint, plaintiff generally alleges that defendants collectively have breached their implied warranties "for fitness of purpose and merchantability." (D.I. 1, Ex. A at ¶ 10) Plaintiffs have not pleaded what defendants' products are, or why they would not be reasonably fit for their general purpose. Plaintiff has not identified any "particular purpose" for which defendants' products were required. There is no factual support that any defendant engaged in conduct giving rise to a claim for breach of implied warranties. Consequently, the court recommends granting defendants' motion to dismiss plaintiff's implied warranty claims in Count I without prejudice.

## C. Count II – Marketing an Ultra-Hazardous Product

In Count II of the complaint, plaintiff states that the defendants "marketed an ultra-hazardous product and placed that product in the stream of commerce." (D.I. 1, Ex. A at ¶ 15) In *Leslie v. U.S.*, 986 F. Supp. 900 (D.N.J. 1997), the court concluded that alleging that a product was "unsafe and ultrahazardous" does not state any independent recognized cause of action under New Jersey law. *Leslie*, 986 F. Supp. at 910. An amendment to the pleading cannot cure a cause of action that is not recognized, so to grant such leave would be futile. Therefore, the court recommends granting defendants' motion to dismiss Count II with prejudice.

### D. Count III – Failure to Warn

In Count III, plaintiff alleges that defendants "breached their non-delegable duty to warn and negligently supplied defective materials and products without ensuring that [Mr. Fish] and his employers were warned about the dangers of asbestos exposure." (D.I. 1, Ex. A at ¶ 18) The failure to warn allegations have been previously addressed in section (IV)(B)(i) *supra*. Therefore, for the same reasons as have already been stated, the court recommends granting defendants' motion to dismiss Count III without prejudice.

### E. Count IV – Civil Conspiracy

In Count IV, plaintiff alleges that defendants "willfully, wantonly and intentionally conspired, and acted in concert, to withhold information from [Mr. Fish] and his employers . . . concerning the known hazards associated with the use of, and exposure to, asbestos-containing products, and asbestos products," "to withhold information from [Mr. Fish] and his employers . . . relating to the fact that asbestos fiber inhalation could be fatal," "to disseminate false product safety information to [Mr. Fish] and his employers," and "to prevent the dissemination of information concerning their products' hazards and dangers." (D.I. 1, Ex. A at ¶¶ 22-25)

In order to plead civil conspiracy under New Jersey law, a plaintiff must show "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a principal element of which is to inflict a wrong against or injury upon another, and an overt act that results in damage." *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 411-412 (D.N.J. 2016). The complaint fails to assert facts suggesting unlawful conduct or lawful conduct done through unlawful means. *See id.* at 412. Plaintiff's civil conspiracy claims are no more than legal conclusions. Even if the allegations are accepted as true, none of the allegations plausibly describe any particular defendant's conduct, but instead

generally assert all defendants engaged in a conspiracy. There is no factual support that any defendant engaged in any conduct giving rise to a claim of civil conspiracy. *See Baldonado*, 2014 WL 2116112, at \*10. Therefore, I recommend granting defendants' motion to dismiss Count IV without prejudice.

### F. Count V – Loss of Consortium

In Count V, plaintiff alleges that due to defendants' actions, she was "wrongfully deprived of her husband's society, services, and consortium." (D.I. 1, Ex. A at ¶ 30) Plaintiff's loss of consortium claim is derivative of her other claims. *See Hoffenberg v. U.S.*, 2013 WL 135134, at \*1 (D.N.J. Jan. 8, 2013) ("Plaintiff cannot succeed on a loss of consortium claim, a derivative claim, when the underlying tort claims have been dismissed.") (citing *Banks v. Int'l Rental & Leasing Corp.*, 680 F.3d 296, 300 n.6 (3d Cir. 2012)). Therefore, I recommend granting defendants' motion to dismiss Count V without prejudice.

### G. Punitive Damages

Plaintiff claims that defendants acted willfully, wantonly, and intentionally, and demands punitive damages. *(Id.* at 9) Under New Jersey law, a plaintiff may recover punitive damages by demonstrating "by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." *Gillman v. Rakouskas*, 2017 WL 379433, at \*2 (D.N.J. Jan. 26, 2017).

Plaintiff has not pleaded any facts that suggest actual malice or willful or wanton conduct. The complaint is bare of factual allegations of any defendant's alleged act or omission, and such other conduct that would arguably be a predicate for survival of a claim for punitive damages. The complaint relies on general, conclusory allegations that refer to all defendants

13

collectively, and does not allege any facts supporting any particular defendant's conduct. *See Baldonado*, 2014 WL 2116112, at \*6. Without any factual allegations, plaintiff "(1) cannot plausibly suggest that *Plaintiff* [ ] [is] entitled to punitive damages *as a result of* the alleged misconduct at issue, and (2) do not plausibly establish that *these particular Defendants* have engaged in that misconduct." *Id.* (emphasis in original). Therefore, the court recommends granting defendants' motion to dismiss plaintiff's claim for punitive damages without prejudice.

## H. Amending the Complaint

It is well-settled that when a complaint is dismissed for lack of factual specificity, the plaintiff "should be given a reasonable opportunity to cure the defect, if [s]he can, by amendment of the complaint . . . ." *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (internal citation omitted). The court has already addressed the recommended nature of dismissal as to the claims for strict liability, negligence, breach of express and implied warranties, failure to warn, civil conspiracy, loss of consortium, and punitive damages. Accordingly, the court recommends dismissal without prejudice for those claims, and that, if the District Court adopts this court's recommendation of dismissal, the District Court thereafter permit plaintiff fifteen (15) days to file an amended complaint. As discussed in section (IV)(C) *supra*, the court recommends dismissing plaintiff's marketing of an ultra-hazardous product claim in Count II with prejudice.

## V. CONCLUSION

For the foregoing reasons, the court recommends granting defendants' motion to dismiss for failure to state a claim in the manner set forth in this report and recommendation. (C.A. No. 18-1195, D.I. 50)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

14

within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February ⎮__, 2019

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

15